Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The carrier on the risk at the time of the alleged injury by accident was Lumbermens Underwriting Alliance.
2. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers Compensation Act. An employee-employer relationship existed between plaintiff and defendant-employer on 2 May 1998.
3. The average weekly wage of plaintiff is $488.46.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was a fifty-five year old man who was employed by defendant-employer as a construction manager beginning on 2 March 1998. His duties included inspection of homes under construction by defendant-employer throughout eastern North Carolina. Plaintiff is a high school graduate with some college experience and EMT certification.
2. Plaintiff alleges that on 2 May 1998 he was inspecting a house under construction in Gates County when he stepped on a nail. Plaintiff testified that the nail pierced the sole of his shoe and broke the skin on his right foot, that he was immediately aware of the injury, that he removed his shoe, that he wiped the wound with alcohol swabs, and that he treated it with an antibiotic ointment and a band-aid.
3. On 11 May 1998, plaintiff was seen by Dr. Robert Powell, his family physician for more than ten years, complaining of pain, swelling and redness in his right foot which he reported had been present for approximately two weeks. On that date, and on 12 May 1998 when he returned, Dr. Powell asked plaintiff whether he had suffered any recent injury to the foot, including punctures or scratches. Plaintiff denied having suffered any such injury recently, but discussed an injury involving stepping on a nail which had occurred several years earlier. Dr. Powell himself carefully inspected the foot and saw no sign of injury, including no puncture wounds and no scratches. Dr. Powell did note other "abnormalities. Dr. Powell had treated plaintiff for diabetes for several years.
4. Following the 12 May 1998 examination, Dr. Powell suggested that plaintiff be admitted to Albermarle Hospital for testing and treatment, but plaintiff declined this suggestion. Dr. Powell also ordered x-rays of the foot, and directed plaintiff to stay off the foot, elevate it and soak it in warm water three to four times daily. He scheduled a follow-up appointment for 13 May 1998.
5. On 13 May 1998, plaintiff called Dr. Powell to postpone his follow up appointment. Instead of keeping off his feet as instructed, plaintiff went to work that day.
6. On 14 May 1998, Dr. Powell received the x-ray reports showing an active destructive process in the right navicular bone of the right foot. He arranged for plaintiff to be seen by Dr. Karl Hubbard, an orthopedic surgeon.
7. Dr. Hubbard examined plaintiff on 14 May 1998 at his office. During that examination, Dr. Hubbard took a history from plaintiff during which he asked whether plaintiff had suffered a puncture wound or any type of injury to the foot. Plaintiff denied any recent injury, but discussed with Dr. Hubbard a nail injury which had occurred several years before. Dr. Hubbard specifically remembered this conversation at his post-hearing deposition. On examination of plaintiffs foot, Dr. Hubbard saw no sign of recent injury to the foot.
8. Immediately following the 14 May 1998 examination, Dr. Hubbard arranged for plaintiff to be admitted to Albemarle Hospital. Because he was driving a company truck, plaintiff returned to the defendant-employers office and was driven to Albemarle Hospital by his supervisor, "Brian K. At no time did plaintiff indicate to his supervisor that he had a work-related injury.
9. At the hearing before the Deputy Commissioner, plaintiff testified that he told Mr. Andrew Raynor, defendant-employers local branch manager, about his alleged injury on 15 May 1998 when Mr. Raynor visited plaintiff in the hospital. However, Mr. Raynor, no longer employed by defendant-employer, denied the account. Likewise, at the hearing, plaintiff testified that he had told the office secretary, Ms. Barbara Quinlan, about the alleged injury, and that he showed her his foot on 5 May 1998. However, Ms. Quinlan testified at the hearing and denied that plaintiff told her about his foot, or showed it to her, prior to 28 May 1998.
10. On 15 May 1998, Dr. Hubbard performed an irrigation and debridement procedure and incisional biopsy on plaintiffs foot. A second irrigation and debridement was performed on 22 May 1998. Cultures from these two surgeries were negative, except that some staph was noted after several days in a culture taken after the first surgery. The staph was noted by Dr. Hubbard to be a possible lab contaminant. No obvious site of infection was found during either surgical procedure. A pathology report from the first procedure found necrotic bone that is consistent with infection or with Charcots foot, a form of diabetic neuropathy.
11. On 29 May 1998, plaintiff was discharged from Albemarle Hospital. On that day, plaintiff told Dr. Hubbard that he remembered having stepped on a nail while at work for defendant-employer on 2 May 1998.
12. Following plaintiffs release from Albemarle Hospital, drainage from his surgical wound was cultured and noted to be contaminated with a form of staph referred to as MRSA, a form of antibiotic-resistant staph typically acquired during hospital stays.
13. Because of the resistant staph infection, Dr. Hubbard considered it likely that plaintiff would require surgical amputation of his foot. He referred plaintiff to Dr. Michael Romash for a second opinion. Dr. Romash diagnosed plaintiff as suffering from diabetic neuropathy, referred to as Charcots foot. Charcots foot results in bone necrosis, pain, swelling, warmth and inflammation, but is unrelated to any known infectious process. By instituting treatment for Charcots foot, Dr. Romash successfully treated plaintiffs foot and avoided the need for amputation.
14. Based upon the record in its entirety, and particularly the credible testimony of Barbara Quilan, Andrew Rainor, Dr. Powell and Dr. Hubbard, plaintiff failed to establish by the greater weight of the evidence that he suffered a compensable injury by accident on 2 May 1998.
15. The evidence is conflicting regarding whether plaintiff was suffering from Charcots foot or from infectious osteomyelitis, or both. However, in either case, the greater weight of the evidence establishes that plaintiffs condition was not caused by an alleged nail puncture on 2 May 1998 because the destructive process evident in plaintiffs foot could not have developed in that amount of time.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff failed to establish by the greater weight of the evidence that he sustained an injury by accident on 2 May 1998 arising out of and in the course of his employment with the defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Therefore, plaintiffs foot condition is not compensable under the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The plaintiffs claim must be, and the same is therefore, denied.
2. Each side shall pay its own costs.
This the ___ day of February 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/bjp